**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>MBMK Property Holdings, LLC<br><br>Debtor. | Chapter 11<br><br>Bankruptcy No.: 22-13121-mdc |

**AGREED ORDER REGARDING MOTION OF DEBTOR FOR ORDER COMPELLING JAMES PAUL OF ALPS GROUP, LLC AND AGENTS TO COMPLY WITH BANKRUPTCY CODE § 543(b) (11 U.S.C. § 543(b))**

THIS MATTER comes before the Court on *Debtor's Motion for Order Compelling James Paul of ALPS Group, LLC and Agents to Comply with Bankruptcy Code § 543(b) (11 U.S.C. § 543(b))* (the "Turnover Motion") filed on January 2, 2023 (Doc. No. 31) by MBMK Property Holdings, LLC ("Debtor"); and *Debtor's Motion Pursuant to L.B.R. 5070-1(g) for Expedited Consideration of Debtor's Motion for Turnover* ("Motion to Expedite") filed on May 20, 2023 (Doc. No. 94) by Debtor.

Secured creditor Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of CoreVest American Finance 2018-02 Trust Mortgage Pass-Through Certificates ("Wilmington Trust") has filed its: *Response to Debtor's Motion for Order Compelling James Paul of ALPS Group, LLC and Agents to Comply with Bankruptcy Code § 543(b) (11 U.S.C. § 543(b)) and Affirmative Request for Relief Under 11 U.S.C. § 543(d)(1)* ("Wilmington Trust Response") on January 17, 2023 (Doc. No. 41).

Debtor, Wilmington Trust, and James W. Paul of the ALPS Group, LLC ("Receiver") now jointly submit this Agreed Order Regarding Motion of Debtor for Order Compelling James Paul

1

of ALPS Group, LLC and Agents to Comply with Bankruptcy Code § 543(b) (11 U.S.C. § 543(b)) to resolve Debtor's Turnover Motion. The history has proceeded as follows:

A.      The debtor filed a voluntary petition for relief pursuant to subchapter V of chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on November 21, 2022 (Doc. Do. 1) (the "Petition Date") with the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court");

B.      Pursuant to 11 U.S.C. § 1183(a), Leona Mogavero, Esq., of Friedman Shuman Attorneys at Law, has been appointed as the Subchapter V trustee in this case ("Subchapter V Trustee");

C.      Debtor filed the Turnover Motion on January 2, 2023. Wilmington filed the Wilmington Trust Response on January 17, 2023 opposing the relief requested in the Turnover Motion.

D.      Wilmington Trust filed its *Motion to Terminate the Automatic Stay Pursuant to 11 U.S.C. § 362(d)(1) For Cause to Allow Secured Lender to Continue to Pursue its State Law Rights and Remedies* ("Motion to Terminate Automatic Stay") on January 20, 2023 (Doc. No. 43);

E.      Debtor is the fee owner of thirteen[1] (13) real property parcels that are currently made available for lease to non-party tenants as single and multi-family housing in Delaware County and Philadelphia County Pennsylvania;

---

[1] Debtor owns 13 distinct properties; one of the 13 properties – 412 Long Lane, in Upper Darby, is a duplex that is rented as two separate units, so there are 14 rental units in total.

F.   On September 27, 2018 CoreVest American Finance Lender LLC ("Lender"), predecessor-in-interest to Wilmington Trust, entered into a commercial Loan Agreement (the "Loan Agreement") with Debtor (the "Loan").

G.   The Loan is evidenced by, and was to be repaid in accordance with, that certain Promissory Note dated September 27, 2018 in the original principal amount of $1,120,700.00 (the "Note"), which Note was executed and delivered by Debtor.

H.   To secure payment of the Loan, Debtor further executed and delivered to Lender an Open-Ended Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 26, 2018, to be effective as of September 27, 2018 (the "Philadelphia County Mortgage"), on two real properties owned by Debtor and situated in Philadelphia County, Pennsylvania (collectively, the "Philadelphia County Mortgaged Property"). The Philadelphia County Mortgage was recorded with the Recorder of Deeds, Philadelphia County, at Instrument No. 53425130, on October 3, 2018.

I.   To secure payment of the Loan, Debtor further executed and delivered to Lender an Open-Ended Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated September 26, 2018, to be effective as of September 27, 2018 (the 'Delaware County Mortgage"), on 11 real properties situated in Delaware County, Pennsylvania (collectively, the "Delaware County Mortgaged Property"). The Delaware County Mortgage was recorded with the Recorder of Deeds, Delaware County, at Instrument No. 2018048437 on October 3, 2018.

J.    On or about December 13, 2018, the Loan Documents[2] were assigned to Wilmington Trust in connection with an Omnibus Assignment of Loan Documents. In particular, the Philadelphia County Mortgage was ultimately assigned to Wilmington Trust by that certain Assignment of Security Instrument dated December 13, 2018 (the "Philadelphia County Assignment"), which was duly recorded with the Recorder of Deeds, Philadelphia County, at Instrument No. 53470082, on January 24, 2019.

K.    The Delaware County Mortgage was ultimately assigned to Wilmington Trust by that certain Assignment of Security Instrument dated December 13, 2018 (the "Delaware County Assignment"), which was duly recorded with the Recorder of Deeds, Delaware County, at Instrument No. 2019010300, on March 7, 2019.

L.    Debtor maintained the Mortgaged Properties as rental properties and retained Bay Management Group Philadelphia ("BMG") to manage the Mortgaged Properties.

M.    Wilmington Trust brought litigation against Debtor for mortgage foreclosure in the following state court actions (together, the "State Court Litigation"):

    1.    *Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of CoreVest American Finance 2018-2 Trust Mortgage Pass-Through Certificates v. MBMK Property Holdings, LLC*, Case No. 00225, in the Court of Common Pleas for Philadelphia County, Pennsylvania (the "Philadelphia Co. Litigation"); and

    2.    *Wilmington Trust, National Association, as Trustee for the Benefit of the Holders of CoreVest American Finance 2018-2 Trust Mortgage Pass-Through Certificates v. MBMK Property Holdings, LLC*, Case No. 2020-008284, in the Court of Common Pleas for Delaware County, Pennsylvania (the "Delaware Co. Litigation").

---

[2] The Loan Agreement, Note and Mortgages, in addition to all other instruments and documents issued in connection with the Loan, are collectively referred to as the "Loan Documents."

N.  Prior to initiating the State Court Litigation, Wilmington Trust exercised its rights under its assignment of rents agreements and sent out notification letters to BMG and the tenants of the Mortgaged Properties. Wilmington Trust contends that these actions had the legal effect of perfecting Wilmington Trust's ownership of the rents under Pennsylvania law. Debtor disputes that the exercise of those rights was proper, had or continues to have those effects. As set forth in paragraph 3 of this Agreed Order, and subject to paragraphs 12 and 13 hereof, the Debtor and Wilmington Trust have agreed herein that the rents and income from the Mortgaged Properties are to be deemed cash collateral under Section 363(a) of the Bankruptcy Code.

O.  On March 10, 2022, Receiver was appointed receiver, by way of Order, over the real property located in Philadelphia County and more commonly known as (1) 2131 Brighton Street, Philadelphia, PA 19149 and (2) 40 E. Rittenhouse Street, Philadelphia, PA 19144 (collectively, the "Philadelphia Co. Properties");

P.  On March 18, 2022, Receiver was appointed, by way of Stipulated Order, receiver over the real property located in Delaware County and more common known as: (1) 245 Burmont Road, Upper Darby, PA 19082; (2) 347 Avon Road, Upper Darby, PA 19082; (3) 355 Avon Road, Upper Darby, PA 19082; (4) 37 Walnut Street, Clifton Heights, PA 19018; (5) 412 Long Lane, Upper Darby, PA 19082; (6) 4690 Sate Road, Drexel Hill, PA 19026; (7) 8513 Lansdowne Avenue, Upper Darby, PA 19082; (8) 419 Glendale Avenue, Upper Darby, PA 19082; (9) 526 Timberlake Road, Upper Darby, PA 19082; (10) 418 Timberlake Road, Upper Darby, PA 19082; and (11) 599 Timberlake Road, Upper Darby, PA 19082 (collectively, the "Delaware Co. Properties").

Q. Wilmington Trust has filed a proof of claim in this Case asserting a secured claim in the amount of $2,084,794.88. (Claims Docket 15).

R. Debtor disputes the Wilmington Trust claim, and reserves the right to file objections and seek other relief by way of adversary proceeding or motion. Without prejudice to, or limitation or waiver of any such objections or claims for relief, and for the purposes of this Agreed Order only, Debtor agrees that Wilmington Trust shall be deemed to possess a secured pre-petition lien, in first position except with respect to any lien properly in place by a taxing authority, if any, in the Debtor's assets including the Mortgaged Properties.

S. A confirmation hearing on Debtor's plan of reorganization is scheduled for August 9, 2023. A hearing on Wilmington's Motion to Terminate Automatic Stay is also scheduled for August 9, 2023.

T. Other than the Wilmington Trust Response, no objections were filed to the Turnover Motion or Motion to Expedite, and Debtor, Wilmington Trust, and Receiver have submitted this Agreed Order prior to the hearing on Debtor's Motions.

Upon agreement of the parties below as evidenced by the signature of their respective counsel, and the Court, having now determined that the relief requested is in the best interest of the Debtor, its estate, its creditors, and other parties in interest, **IT IS HEREBY ORDERED** that the Debtor's Turnover Motion be and hereby is **GRANTED**, subject to and in accordance with the following terms and conditions:

1. **Turnover of Properties**. On the date of entry of this Agreed Order by the Court (the "Effective Date"), the Receiver shall immediately commence turnover to Debtor of control, possession, and custody of the Mortgaged Properties and all contract rights, bank accounts, tax

accounts, escrow accounts, receivables, causes of action, and other assets connected with the Properties, together with any and all other property of the Debtor held by or transferred to Receiver, and all proceeds, product, offspring, rents, or profits of such property, that is in Receiver's possession, custody or control as the Effective Date, so as to have fully complied with its obligations of turnover under Bankruptcy Code § 543(b)(1) by no later than June 19, 2023.

    a.    Without limitation of the foregoing, Debtor shall be given possession, custody and control over (A) the entire Mortgaged Properties (B) all assets associated with or derived from the Mortgaged Properties, and (C) subject to the terms of this Agreed Order, all rents and other income the Mortgaged Properties generate on or after the Effective Date.

    b.    Receiver shall, by no later than 5 p.m. on June 13, 2023, provide a verified statement of the following:

> i. The total amount of cash representing amount of funds held by Receiver as of the Effective Date representing rents or other proceeds, product, offspring, profits or income from the Mortgaged Properties (the "Cash on Hand"), exclusive of tenant deposits, to be turned over to the Debtor pursuant to this Agreed Order;
>
> ii.    The total amount of tenant security deposits ("Tenant Deposits") held by Receiver as of the Effective Date, to be turned over to the Debtor pursuant to this Agreed Order; and
>
> iii.    A rent roll setting forth the following information relating to each of the Mortgage Properties:

        1. Whether the property is currently leased to a tenant, and if so the identification of the tenant by name, the current lease terms and written lease, if any, reflecting those terms.

        2. Whether the tenant is in default and if so, the basis of such default;

        3. The rent paid by the tenant, if any, since March 31, 2023;

        4. The date of receipt of the last rental payment.

    iv. The identification of any vacant properties.

    v. The identification of any properties known or believed to be occupied by squatters, trespassers or other persons not under lawful lease agreement.

  c. Receiver hereby represents and warrants that the Cash on Hand (exclusive of Tenant Deposits) to be turned over the Debtor under this agreed Order, shall be not less than $20,000.

  d. Without limitation of the foregoing, Receiver, its representatives, property managers and any persons acting under its direction or control, shall immediately transfer or deliver the following to Debtor:

    i. deposits, rents, profits, and proceeds derived from the Mortgaged Properties on hand as of the Effective Date or collected thereafter;

8

ii. to the extent any deposits are held in escrow, the location of the escrow account, any escrow agreements, and all correspondence and agreements concerning such escrowed funds;

iii. all agreements of sale, leases, purchaser lists, prospective purchaser lists, tenant lists, tenant files, rent payment records, sale records, deposit records and any and all correspondence with tenants and/or buyers;

iv. equipment leases, employment agreements, supply or service agreements, and other contracts affecting the Mortgaged Properties or items used in association with the Mortgaged Properties;

v. all contracts and agreements with parties holding mechanic's liens on the Mortgaged Properties;

vi. banking documents and statements for all funds, revenues, deposits and expenses administered for or concerning the Mortgaged Properties;

vii. bills and account statements for items or services acquired from vendors or suppliers since Receiver's appointment as receiver;

viii. real estate tax bills and all tax sale notices related to the Mortgaged Properties;

ix. notices of taking or of eminent domain proceedings affecting the Mortgaged Properties;

x. notices and correspondence regarding any violation of local, State or Federal law regarding the Mortgaged Properties;

xi. a list of account numbers for all utilities serving the Mortgaged Properties, or copies of the most recent billings from each one of those utility companies;

xii. a list of any pending proceedings in any court regarding or relating to leases or contracts on the Mortgaged Properties;

xiii. all inventory and equipment lists;

    xiv.    books and records pertaining to accounts payable and accounts receivable with respect to the Mortgaged Properties;

    xv.    all environmental reports and test results in Debtor's possession relating to the Mortgaged Properties or any portion thereof;

    xvi.    copies of cumulative monthly operating statements for the Mortgaged Properties generated since Receiver's appointment as receiver;

    xvii.    all documents relating to legal actions between Debtor and any tenant or vendor arising out of any services, property or interest pertaining to the Mortgaged Properties; and

    xviii.    all such other items, records or documents that Debtor may reasonably require to operate, manage and maintain the Mortgaged Properties.

e.    Without limitation of the foregoing, Receiver, its representatives, property managers and any persons acting under its direction or control, shall upon the Effective Date transfer or deliver to Debtor (A) all keys, security cards and access devices for the Mortgaged Properties, and (B) all passwords, usernames and other information needed to access any computer program or software used at the Mortgaged Properties or used in conjunction with the administration of the Mortgaged Properties.

f.    Upon the entry of this Agreed Order, Receiver shall give over to the Debtor copies of all records of income, expense, receivables and payables relating to the Mortgaged Properties for the period Receiver has been in possession and control of the Mortgaged Properties. In the event such records exist but are not in Receiver's possession, custody or control, then within ten (10) days of the date of this Agreed Order Receiver shall collect from its representatives, property managers and any persons acting under its direction or control copies of all records of

income, expenses, receivables and payables relating to the Mortgaged Properties since that same date and forward those materials to the Debtor. This Order shall be sufficient grounds for any vendor or provider to supply this information to the Debtor should it become necessary for the Debtor to make the request.

    g.  Receiver shall, within twenty (20) days of the Effective Date, file an accounting in accordance with 11 U.S.C. § 543(b)(2) and Federal Bankruptcy Rule 6002.

    h.  Nothing in this Order shall impose, or require Debtor to assume any contract, liability or obligation entered into by the Receiver, or release or discharge Receiver from any contract, liability, duty or obligation arising out of or relating to Receiver's acts or omissions during its possession, custody or control of the Mortgaged Properties and until full compliance with the provisions of this Order.

    i.  Without limitation of any of the foregoing, Debtor reserves the right to request relief (including, without limitation, at the "Cash Collateral Hearing" scheduled pursuant to paragraph 14 below) with respect to any claims against the Receiver for conditions of the Mortgaged Properties that require immediate remediation in order to bring the properties into compliance with any laws or regulations relating to the health and safety of occupants, or otherwise necessary to secure their proper licensing as rental properties.

    2.  **Licenses**. Subject to any limitations allowed under and in accordance with the Bankruptcy Code applicable to Debtor, Debtor shall maintain, preserve and operate the Mortgaged Properties pursuant to all necessary and required licenses and permits, including without limitation, business licenses, building permits, governmental approvals, state health department

licenses, licenses to conduct business, and such other permits, licenses and rights obtained from any governmental, quasi-governmental, or private personal entity whatsoever; provided further that Debtor's obligations to maintain, preserve and operate the Mortgaged Properties shall not require the Debtor to incur any expense that cannot be paid from immediately available cash or Cash Collateral authorized in accordance with paragraph 3, below.

3. **Use of Cash Collateral**. For purposes of this Agreed Order only, and subject to paragraphs 12 and 13, below:

   a. All rents and income generated from the Mortgaged Properties on or after the Effective Date, shall, upon receipt by the Debtor, be deemed to be "Cash Collateral" of Wilmington Trust under Section 363(a) of the Bankruptcy Code.

   b. All Cash Collateral shall be deposited in the debtor's existing DIP Account, being Account No. *****0987 at JP Morgan Chase Bank, N.A., and used only in accordance with the provision of this Agreed Order.

   c. Wilmington Trust shall be deemed to hold a valid, perfected security interest in the Debtor's property, including its Cash Collateral, which would entitle it to adequate protection for any diminution in the value of its respective collateral arising from the Debtor's post-petition use thereof. The Debtor requires continued use of cash collateral in order to continue its business operations without interruption, and to avoid immediate and irreparable harm to the estate that would result in the absence of the use of cash.

   d. Absent any order to the contrary, the Debtor is hereby authorized to use Cash Collateral in accordance with a budget (the "Cash Collateral Budget") to be

agreed to between Wilmington Trust and the Debtor on or before June 15, 2023. Without limitation of the parties' right to seek agreement to other reasonable terms and conditions, it is hereby stipulated and agreed to by Wilmington Trust that such Cash Collateral Budget shall:

    i. authorize the <u>interim</u> use of Cash Collateral from the Effective Date of this Order until August 9, 2023, the date of the hearing on confirmation of the Debtor's plan of reorganization and the Motion to Terminate Automatic Stay, at which time the Court may conduct a hearing on further interim use of cash collateral, if necessary;

    ii. authorize the use of a minimum of $4,000 in Cash Collateral between the Effective Date and June 30, 2023 to be applied to any immediate needs for maintenance, repair and legal compliance of the Mortgage Properties;

    iii. include a provision allowing the Debtor to request that Wilmington Trust approve additional amounts to address emergencies relating to the health and safety of occupants, or otherwise necessary to secure their proper licensing as rental properties, which requests shall not be unreasonably denied; and

    iv. provide for submission of any disputes over the use of Cash Collateral to the Court on an expedited basis, where reasonably justified to address emergencies relating to the health and safety

   of occupants, or otherwise necessary to secure their proper licensing as rental properties.

 e. Debtor may seek advance permission, in writing, from Wilmington Trust to spend in excess of this allowed amount, but nothing herein shall require the Wilmington Trust to permit such use of its Cash Collateral.

 f. All Cash Collateral not used in accordance with paragraph 3, above, shall remain in the DIP Account.

4.  **Separate Accounts**. All Cash Collateral shall be deposited in the Debtor's DIP Account. Debtor shall provide Wilmington Trust copies of DIP Account statements within 24 hours of written request to Debtor and Debtor's counsel.

5.  **Adequate Protection in Favor of Wilmington Trust**. As adequate protection for use of and any diminution in the value of the collateral, and subject to paragraphs 12 and 13, below:

 a. *Replacement Lien.* Wilmington Trust is granted a senior perfected replacement security interest under Section 361(2) of the Bankruptcy Code in the Debtor's post-petition property and proceeds thereof (excluding the Debtors' rights under Section 544, 545, 546, 547, 548, 549, and 500 of the Bankruptcy Code), to the same extent and priority as Wilmington Trust's finally determined security interests in the Debtor's pre-petition property and the proceeds thereof.

 b. *Deemed Perfected.* The replacement lien and security interest granted herein is automatically deemed perfected upon entry of this Order without the necessity of Wilmington Trust taking possession, filing financing statements, mortgages or other documents. Although not required, upon reasonable request by

Wilmington Trust, Debtor shall execute and deliver such instruments or documents considered by Wilmington Trust to be reasonably necessary in order to perfect the security interests and liens in the Debtor's post-petition collateral and proceeds granted by this Order.

6. **Insurance**. Debtor shall keep all of its assets, including but not limited to the Mortgaged Properties, insured by reasonable and sufficient as required under the applicable provisions of the Bankruptcy Code and Rules; and shall, upon request and reasonable notice, provide Wilmington Trust with proof of the ongoing existence of such insurance.

7. **Weekly Financial Reporting**. Debtor shall provide to Wilmington Trust weekly financial reports no later than 3:00 p.m. on the Wednesday following the prior week, with the first report due on Wednesday, June 21, 2023 for the week ending Friday, June 16, 2023. Such reports shall contain and reflect the following: (a) cash revenues collected and cash expenditures made by Debtor during the preceding week; (b) a comparison of the actual revenues and expenditures compared to the budgeted amounts; and (c) such other information as may be reasonably requested by Wilmington Trust. Debtor shall also provide to Wilmington Trust copies of all Chapter 11 Monthly Operating Reports filed by Debtor.

8. **Monthly Financial Reporting**. Debtor shall provide to Wilmington Trust monthly Debtor Reports no later than 3:00 p.m. on the Wednesday following the close of the prior month. Such reports shall contain and reflect the following minimum items: (a) occupancy of each of the Mortgaged Properties; (b) the total funds currently held by Debtor in all accounts as of the prior month end; and (c) all requests for use of funds not authorized in the Cash Collateral Budget in

excess of $1,000.00 for any single item the purpose of maintenance, repair, or other upkeep of the Mortgaged Properties.

9. **Rights of Inspection and Audit**. The Debtor shall, upon request and reasonable notice, further provide Wilmington Trust with financial statements setting forth the Debtor's revenue and expenses to permit Wilmington Trust to determine the extent to which the Debtor is complying with the Budget. Upon reasonable notice by Wilmington Trust, the Debtor shall permit Wilmington Trust and any of its agents reasonable and free access to the Mortgaged Properties and such other of Debtor's records.

10. **Default**. Any of the following events or occurrences shall constitute an event of default ("Default") under this Agreed Order:

    a. Failure to comply with any of the terms of this Agreed Order; and

    b. Submission of any materially false or inaccurate information by Debtor to Wilmington Trust or to the Court;

provided, further, that no Default maybe declared unless the Debtor has failed to cure the event of default within five (5) days of written notice thereof to Debtor and Debtor's counsel.

11. **Remedies Upon Default**. Upon the occurrence of a Default, Wilmington Trust shall be entitled to file a Notice of Default with the Court. Unless the Notice of Default is withdrawn by Wilmington Trust or stayed or overruled by the Court, the Debtor's authority to use Cash Collateral shall terminate five (5) days after Wilmington Trust files the Notice of Default. Upon determination that any alleged Default did not occur, was improperly declared or did not

warrant termination of the Debtor's authority to use Cash Collateral, the Court may, at its discretion, stay, reinstate or modify the terms of this Agreed Order to allow Debtor to continue to use Cash Collateral. Upon declaring and noticing a Default, the Secured Creditor shall be granted an expedited hearing on the Motion for Termination of Automatic Stay. Notwithstanding the foregoing, Wilmington Trust shall provide a minimum of five (5) days' notice to Debtor and to all parties in interest prior to any hearing on the Motion for Termination of Automatic Stay.

12. **Preservation of Debtor's Rights and Claims**. Nothing in this Agreed Order is intended or shall be construed to limit, waive or in any way prejudice the rights of the Debtor to object to any claims or seek other relief by way of motion, application or adversary proceeding, including (without limitation) (i) to dispute and object to any claims filed or to be filed by Wilmington Trust, the Receiver or any other person, (ii) to dispute any allegations of default under the Loan Documents, (iii) to dispute any actions taken to enforce the Loan Documents; (iv) to equitably subordinate any claims or liens; (v) to challenge the extent, validity or priority of any liens; (vi) to avoid any transfer or recover any property; (vii) to assert any claim for recovery or offset of damages to its property; or (viii) to enforce any other right, remedy or power authorized under the Bankruptcy Code or otherwise applicable law.

13. **Miscellaneous Provisions**.

    a. *No Limitation.* Nothing contained herein shall be deemed or construed to (i) limit Debtor, Wilmington Trust, or the Receiver to the relief granted herein; (ii) bar Debtor, Wilmington Trust or the Receiver from seeking other and further relief for cause shown on appropriate notice to parties-in-interest entitled to notice of same, (provided, however, that any such relief constituting modification of this Order shall be permitted only to the extent consistent

with the terms of the this Agreed Order), (iii) require the Wilmington Trust to make any loans or advances to Debtor, (iv) be Wilmington Trust's acceptance of any plan of reorganization or liquidation submitted at any time by the Debtor or any other party, or (v) be Wilmington Trust's acceptance of any motion by Debtor seeking authority for the sale of any of the Mortgaged Properties under the Bankruptcy Code, and (vi) nothing contained herein shall work in derogation of any other rights possessed by Wilmington Trust under any and all applicable provisions of Title 11 of the United States Code.

      b.    *Surcharge/Carveout.* Debtor acknowledges and agrees that except as contained in the Budget, any party's consent to the entry of this Order does not constitute an agreement, consent or acknowledgment that (i) any cost or expenses of administration may be imposed against a party in interest or its collateral under Sections 506(c) or 552 of the Bankruptcy Code or otherwise by the Debtor, or (ii) to the carve-out from any party in interest's collateral any amounts to be utilized for the payment of any professional fees incurred by the Debtor.

14.    **Further Hearing.** In the event a further hearing is needed to address either (i) unresolved disputes between Wilmington Trust and the debtor over the Cash Collateral Budget, or (ii) to address any claims by the Debtor seeking immediate relief against Receiver pursuant to paragraph 1.i above (relating to conditions of the Mortgaged Properties that require immediate remediation in order to bring the properties into compliance with any laws or regulations relating to the health and safety of occupants, or otherwise necessary to secure their proper licensing as rental properties); a further hearing is hereby scheduled before the Court for June 20, 2023 at 1:00 p.m., in Bankruptcy Courtroom No. 2, U.S. Bankruptcy Court, 900 Market Street, Philadelphia, PA. Counsel for the Debtor shall notify Court via email to Courtroom deputy

Eileen Godfrey if the hearing is not necessary..

**IT IS SO ORDERED.**

BY THE COURT:

Dated: June 13, 2023

_____
HONORABLE MAGDELINE D. COLEMAN
CHIEF UNITED STATES BANKRUPTCY JUDGE

STIPULATED AND AGREED THIS 12th DAY OF JUNE, 2023:

By: _____
Robert B. Eyre, Esq.
The Law Offices of Foehl & Eyre, P.C.
rob@foehllaw.com
*Counsel for Debtor*

By: /s/Alan I. Ehrenberg
Alan Ehrenberg, Esq.
Alan I. Ehrenberg, LLC
aehrenberg@aielegal.com
*Counsel for Receiver*

By: /s/ David P. Cañas
David P. Cañas, Esq.
Gordon Rees Scully Mansukhani, LLP
dcanas@grsm.com
*Counsel for Secured Creditor*